# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | | |
|---|---|---|
| RUUD LIGHTING, INC., <br> a Wisconsin corporation, <br><br> Plaintiff-Counterclaim Defendant, <br><br> v. <br><br> COOPER LIGHTING, LLC <br> a Delaware corporation, <br><br> Defendant-Counterclaim Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 2:10-cv-00280-CNC |

## DEFENDANT COOPER LIGHTING, LLC'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff's reply brief understates the prejudice resulting from the multiplication of issues in the lawsuit should leave be granted. Cooper files this brief sur-reply to address some of these issues.

**A.     Allowing The Proposed Amendment Will Substantially Prejudice Cooper.**

Plaintiff argues that leave should be granted because it "only" seeks to add two patents, a "handful" of additional claims, and a "lone additional product." But, Plaintiff does not confront the implications of what these additions mean to this litigation.

Plaintiff argues that one of the new patents is simply a continuation patent and thus "[o]nly the claims differ." This is precisely the reason that there is prejudice to Cooper. It is true that U.S. Patent No. 7,686,469 (the "'469 Patent") and U.S. Patent No. 8,070,306 (the "'306 Patent") are both directed to LED lighting fixtures. But, there are substantial differences between the claims of the '469 and '306 Patents. After all, if the '306 Patent raised no new

1

material issues, there would be no need to add it. For example, the '469 Patent requires that the heat sink of the LED lighting fixture be "secured" to the border structure. Claim 20 is typical:

> 20. An LED lighting fixture comprising: a housing including a first and second border structures; an LED assembly secured with respect to the housing to permit air/water flow over the LED assembly which includes at least one LED-array module mounted on an elongate extruded LED heat sink that extends along the housing and has a base with an LED-engaging surface and an opposite heat-transfer surface extending between the two heat sink ends, with **the heat sink being secured with one end at the first border structure** and the other end at the second border structure; and the heat-sink end and adjacent border structure define an air gap there between.

*See* **Exhibit 1**, U.S. Patent No. 7,686,469 at Column 11, line 14-Column 12, line 8 (emphasis added). The requirement that the heat sink be "secured" to the border structure limits the claims. It also affects the scope of the potentially infringing products and the prior art that may anticipate it.

The requirement that the heat sink be "secured" to the border structure was removed in Claim 1 of the '306 Patent. Claim 1 of the '306 Patent specifies "one heat-sink end being **at** the first border structure." *See* **Exhibit 2**, U.S. Patent No. 8,070,306 at Column 9, lines 2-13 (emphasis added). The change to require the heat sink to be "at" the border structure changes the coverage of the patent. Under the '469 Patent, LED structures that did not have a "heat sink being secured with one end at the first border structure" would not infringe. Under the '306 Patent, Plaintiff will no doubt argue that LED structures need not have "the heat sink being secured with one end at the first border structure" to infringe.

This one change materially alters the scope of the litigation. First, the claims of the '306 Patent must be construed and the issues will differ from those raised in the construction of the '469 Patent. For example, how close does the heat-sink end need to be to be considered "at" the border structure? Second, this one change raises new validity issues. For example, the change to

2

require that the heat-sink end be "at" the border structure may render the claim indefinite. Third, new prior art could now potentially invalidate the '306 Patent. Thus, Cooper must repeat prior art searches.[1] It also requires Cooper to examine its invalidity theories. Fourth, the change may also prompt Plaintiff to accuse more products. This requires substantial additional discovery. Fifth, the change in the language of the claim potentially creates substantial new damage issues. The increase in the potential number of products at issue by itself may change the alleged damages. Moreover, the possibility of a design around greatly affects the amount of a reasonable royalty. The change to require the heat-sink end to be "at" the border structure, may change the scope of potential design arounds.

All of these consequences arise from one different claim between the '469 Patent and the '306 Patent. **The scope of the additional work is multiplied for every material change in claim wording between the '469 Patent and '306 Patent**.

Plaintiff attempts to focus this court on irrelevant similarities by arguing that the two patents have "the same specification." Plaintiff also attempts to minimize the substantial differences by stating that "[o]nly the claims differ." That is akin to saying that two contracts are the same because the recitals are identical and only the obligations differ. Differences in claim language go to the very heart of this litigation. They affect what products infringe, potential damages, claims construction, invalidity theories, and more.

In addition to proposing to add claims from the '306 Patent, Plaintiff also proposes to add another new patent, U.S. Patent No. 7,952,262, that is not a continuation of any patent in suit. From this patent, Plaintiff intends to assert brand new claims. Unlike the '306 Patent, Plaintiff does not attempt to argue that the relevant claims language is similar. Plaintiff also proposes to

---

[1] It is worth keeping in mind Plaintiff researched whether it had a claim against Cooper for seven months before seeking leave to amend.

add at least one additional accused product. Accordingly, new claims construction issues will be presented; prior art searches will have to be re-done; and new invalidity analysis will need to take place.

These changes will result in substantial prejudice to Cooper. Having successfully delayed discovery by refusing to agree to a protective order, Plaintiff now cites the lack of discovery as a reason why its amendment should be granted. While Plaintiff attempts to shift the blame for the discovery issues to Cooper, as discussed below, the discovery issues are the fault of Plaintiff. Plaintiff should not be permitted to benefit from its discovery delays.

In its response, Plaintiff actually tries to argue that the discovery issues are the fault of Cooper. What Plaintiff fails to acknowledge is that for months it refused to agree to a protective order. Because of this delay in the protective order, document production has been delayed. Plaintiff trumpets its production, but fails to disclose that the production largely consisted of marginally relevant documents such as a print out of Plaintiff's website. Plaintiff's production failed to include any electronic production, only producing **some** hard copies of emails. Plaintiff criticizes Cooper's production, but that production was delayed by the absence of a protective order, which was the result of Plaintiff's inaction.

Plaintiff also criticizes Cooper for only noticing one deposition. Plaintiff opposed even that one deposition. And it is inefficient to depose witnesses before document production only to re-depose them after document production.[2] The absence of depositions stems from the same root cause: Plaintiff unreasonably delayed in agreeing to a protective order and producing documents. In short, the status of discovery is no reason to grant leave to amend.

---

[2] After the recent pretrial conference, Plaintiff produced approximately 25,000 pages with a promise of a "rolling production." It is disingenuous to hold back the vast bulk of documents and then assert Cooper should have deposed more witnesses.

4

HOU:0017758/00060:1582487v3
Case 2:10-cv-00280-CNC   Filed 03/02/12   Page 4 of 6   Document 53

Nonetheless, Plaintiff's focus on the current status of discovery ignores much of the prejudice that will be suffered by Cooper. Cooper will be required to consider a host of new claims construction issues without adequate time before its brief regarding claims construction is due. Cooper will also have to re-do its prior art searches, an expensive and time consuming prospect. A host of additional discovery will need to be taken to address the different claims, array of new products potentially at issue, new invalidity theories, and other issues. Merely identifying the new prior art issues and potential invalidity theories may take months given the different language contained in the '306 Patent. Because Cooper will be required to re-do work already performed at substantial expense and because re-doing this work and performing all of the new additional work cannot be accomplished in the current schedule, Cooper will be severely prejudiced by the amendment. Indeed, Cooper will be severely handicapped in providing pre-trial motions, conducting the necessary discovery, and properly developing and supporting its defenses to Plaintiff's allegations.[3]

**B.      Should The Court Grant Leave, A New Scheduling Order Is Required.**

Plaintiff's motion for leave should not be granted because it will unduly prejudice Cooper's ability to defend the case. Should the Court, however, decide to grant leave, a new scheduling order permitting Cooper additional time to brief claims construction issues, develop invalidity defenses, and conduct discovery should be entered.

Plaintiff attempts to capitalize on a late amendment by opposing any additional time for Defendants to defend the new claims. This is manifestly unfair. As demonstrated above, the amendment will require prior work to be re-done and an array of additional work for Cooper to

---

[3] Cooper does not readdress in this sur-reply the request for reexamination of the '306 Patent. Cooper stands on its prior briefing. As noted in Cooper's original response, a reexamination could result in a stay of the litigation. There is no reason to inject this potential delay into this proceeding.

5

prepare its defenses. For those reasons, leave should be denied. But, if leave is granted, Cooper should be afforded additional time to complete this work.

Respectfully submitted,

Dated: March 1, 2012
/s/ Craig Weinstock
Craig Weinstock
cweinstock@lockelord.com
**LOCKE LORD LLP**
2800 JPMorgan Chase Tower
600 Travis St. Suite 2800
Houston, Texas 77002
Telephone: 713-226-1200
Facsimile: 713-223-3717

J. Matthew Goodin
jmgoodin@lockelord.com
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-0700
Facsimile: 312-896-6472

Attorneys for
Cooper Lighting, LLC and
Illumination Management Solutions, Inc.